■ MARIETTA SMALL, Appellant, v CONEY ISLAND SITE 4A-1 HOUSES, INC., et al., Respondents. [814 NYS2d 240]—

In an action to recover damages for wrongful death, etc., the plaintiff appeals from an order of the Supreme Court, Kings County (Bunyan, J.), dated August 8, 2003, which granted the defendants' motion for summary judgment dismissing the complaint.

Ordered that the order is affirmed, with costs.

On January 15, 1999 at approximately 8:00 A.M., the plaintiff's decedent was found lying on the floor of the partially exposed hallway of the apartment building where he resided. There was ice on the walkway where the decedent was discovered. Hail, snow, freezing rain, and rain began to fall in the early morning hours of January 14, 1999 and continued to fall until at least 9:00 A.M. on January 15, 1999. After being transported to the hospital, the decedent was pronounced dead at 9:51 A.M. An autopsy report listed the cause of death as "blunt impact head trauma." The autopsy report also revealed that the decedent had an enlarged heart and had recently abused cocaine.

The plaintiff commenced the instant action to recover damages for wrongful death. Thereafter, the defendants moved for summary judgment dismissing the complaint. The Supreme Court granted the motion. We affirm.

Assuming that the alleged icy condition was the proximate cause of the decedent's death, the defendants made a prima

facie showing of entitlement to judgment as a matter of law (see *Alvarez v Prospect Hosp.*, 68 NY2d 320 [1986]) by submitting evidence that there was a storm in progress at the time of the incident (see *Dowden v Long Is. R.R.*, 305 AD2d 631 [2003]; *Wines v City of New York*, 283 AD2d 639, 640 [2001]; *Smith v Leslie*, 270 AD2d 333, 334 [2000]).

In opposition, the plaintiff failed to raise a triable issue of fact. "[W]here, as here, the allegation is that the icy surface was created sometime before the storm, it is [the] plaintiff's burden to establish 'that the precipitation from the storm in progress was not the cause of the incident' " (*Parker v Rust Plant Servs., Inc.*, 9 AD3d 671, 672-673 [2004], quoting *Campagnano v Highgate Manor of Rensselaer*, 299 AD2d 714, 715 [2002]). The plaintiff's evidence that ice had been present for a "day or two before [the incident]" was insufficient to raise a triable issue of fact as to whether the decedent allegedly fell on "old" ice (see *Simmons v Metropolitan Life Ins. Co.*, 84 NY2d 972, 973-974 [1994]; *Wines v City of New York, supra* at 640; *Chapman v City of New York*, 268 AD2d 498 [2000]). To say that "old" ice caused the subject ice patch as opposed to the storm in progress would require a jury to resort to conjecture and speculation in order to determine the cause of the incident (see *Simmons v Metropolitan Life Ins. Co., supra; see generally Taylor v New York City Tr. Auth.*, 19 AD3d 478, 479 [2005]).

Moreover, contrary to our dissenting colleague's view, the plaintiff's assertion that the subject hallway had a drainage problem was also insufficient to raise a triable issue of fact. While the dissent relies upon the opinion of the plaintiff's engineer, who stated, inter alia, that the drains on the subject walkway were insufficient to prevent the accumulation of water, the engineer's report is dated January 8, 2003, approximately three years after the incident. Significantly, the engineer did not indicate in his report when he inspected the drains.

Accordingly, the Supreme Court properly granted the defendants' motion for summary judgment dismissing the complaint. Krausman, J.P., Mastro and Rivera, JJ., concur.

Skelos, J.(dissents and votes to reverse the order and deny the motion, with the following memorandum): The plaintiff's decedent died after he allegedly slipped and fell on a large patch of ice located by the elevators in the exterior hallway outside his apartment. The Supreme Court concluded that the "[p]laintiff's claim that the ice patch was actually caused by inadequate drainage in the walkway and the freezing of pre-existing standing water [was] speculative since it [was] just as plausible that the ice patch in question was created by the ongoing snow and

ice storm." The Supreme Court granted the defendants' motion for summary judgment dismissing the complaint.

While I agree with the majority that the defendants made out a prima facie case under the so-called storm-in-progress rule (*see Dowden v Long Is. R.R.*, 305 AD2d 631 [2003]), I disagree with their determination that the plaintiff, in opposition, failed to raise a triable issue of fact. Under the storm-in-progress rule, a property owner will not be held liable for accidents occurring as a result of the accumulation of snow or ice on its premises until an adequate period of time has passed following the cessation of the storm to allow the owner an opportunity to ameliorate the hazards caused by the storm (*see Dowden v Long Is. R.R., supra; Smith v Leslie*, 270 AD2d 333, 334 [2000]; *Taylor v New York City Tr. Auth.*, 266 AD2d 384 [1999]; *Mangieri v Prime Hospitality Corp.*, 251 AD2d 632, 633 [1998]).

Here, in opposition to the defendants' prima facie showing, the plaintiff raised a triable issue of fact through the affidavits of another resident of the building who, at the time of the incident, lived on the same floor as the decedent, a neighbor who resided in the building across the street, and a licensed engineer that the ice on which the decedent slipped and fell was not the result of a storm in progress.

Specifically, the resident who lived on the same floor as the decedent asserted that "the walkway [where the decedent fell] was very icy and the ice had been there for a day or two before [the incident]," and that during the two-year period when she resided at the subject building, "there [had] been a drainage problem" on the walkway causing water to accumulate and, in the winter, freeze, particularly around the area by the elevators where the incident occurred. She also asserted that building maintenance was aware of the problem, although the building superintendent denied knowledge of it.

In her affidavit, the neighbor from another building asserted that she frequented the decedent's apartment on many weekends and that "[t]here was a constant problem with the drains [for the] outside walkways on the 21st floor" where the incident occurred. She stated, "The walkways would flood and form puddles . . . In the winter, the water would freeze making walking very dangerous. The largest puddles would form by the elevator. This condition existed for at least a couple of years before" the incident.

The plaintiff's expert, a licensed engineer, who physically inspected the premises and reviewed photographs of the walkway depicting its condition at the time of the incident, asserted that the three drains on the subject walkway were insuf-

ficient to prevent the accumulation of standing water because they were higher than the lowest point of the floor, the floor was not contoured sufficiently to lead water to the drains, and there was an insufficient number of drains to prevent water from puddling. The engineer also asserted that the "[d]efendants departed from good and accepted construction practice and violated . . . New York City Building Code" Administrative Code of the City of NY § 27-369 (f) (formerly § C26-604.2 [f]), which provides that "[e]xterior corridors shall be roofed, and shall have solid floors drained to prevent accumulations of standing water." The engineer opined that "[t]his violation was a competent producing cause and created the icy condition which caused [the] decedent's fall."

The engineer also asserted that the defendants departed from good and accepted construction practice by failing to enclose the exterior corridor to its full height near the elevator shaft where winds were amplified by the elevator shaft creating a "wind tunnel." The engineer opined that this failure contributed to the creation of an area where ice would form creating a slipping hazard. The engineer further opined that the "defendants . . . departed from good and accepted [construction] practice in failing to provide a safe means of ingress, egress and access to the stairs and elevators" and that since "[t]he exterior hallway [was] the only means of access to the stairs and elevator . . . good and accepted construction practice required that [the] hallway be enclosed in inclement weather." Lastly, the engineer opined that the defendants' failure to salt and sand periodically, particularly in the area near the elevator shaft where water would collect and freeze, contributed to the slipping hazard which caused the decedent's fall.

In addition, one of the decedent's daughters testified at her deposition that the area where her father was found was scattered with "thick ice," with "some snow covering it." She further described the ice as being about an "an inch," in thickness. The decedent's other daughter also testified that when she went into the hallway shortly after the incident "ice was everywhere, there [were] little patches of snow," and the ice "was pretty thick." The Supreme Court noted that there were some inconsistencies in the testimony of the plaintiff's witnesses regarding the description of the ice, stating that the decedent's common-law wife "testified at her deposition that the ice was 'thick,' [but] she also testified that 'it looked like it was new.' " However, the resident who lived on the same floor as the decedent asserted that she saw the ice a day or two before the incident. Those inconsistencies did not render the plaintiff's op-

position to the defendants' motion insufficient, rather they demonstrated the existence of triable issues of fact, which cannot be resolved on a summary judgment motion (*see Strange v Colgate Design Corp.*, 6 AD3d 422 [2004]; *see generally Glick & Dolleck v Tri-Pac Export Corp.*, 22 NY2d 439, 441 [1968]).

Thus, the evidence proffered by the plaintiff raised a triable issue of fact that an ongoing drainage problem, not a storm in progress, was the proximate cause of the decedent's injuries. In addition, under these circumstances, the plaintiff raised a triable issue of fact as to whether the defendants had a reasonable time to undertake remedial measures (*see Elbert v Dover Leasing, LP*, 24 AD3d 497 [2005]; *Amodeo v New York City Tr. Auth.*, 10 AD2d 982, 983 [1960]). Moreover, where, as here, the exterior hallway outside the decedent's apartment, which was on the 21st floor of a 24-story building, was the sole means of ingress and egress to and from his apartment affording the only access to the building's elevators and stairs, the defendants' failure to ameliorate the icy condition for at least two days and provide safe access was unreasonable under the circumstances (*see Basso v Miller*, 40 NY2d 233, 241 [1976]).

The Supreme Court's conclusion that the plaintiff's claim that the subject ice patch was caused by inadequate drainage in the walkway and the freezing of preexisting standing water was speculative ignores the affidavits of the engineering expert and the plaintiffs' other witnesses, competent admissible proof as to the cause of the accident (*cf. Teplitskaya v 3096 Owners Corp.*, 289 AD2d 477, 478 [2001]).

Accordingly, I conclude that, under the facts of this case, there exists a triable issue of fact that the icy condition causing the decedent's fall was not a result of a storm in progress. I, therefore, respectfully disagree with the majority that the defendants' motion for summary judgment dismissing the complaint was properly granted.